### THE CETEWAYO.

*(District Court, E. D. New York.   December 17, 1881.)*

1. SALVAGE—WRECKING VESSELS—RIGHT OF CREW TO SALVAGE COMPENSATION.
    The fact that a salving vessel was used in the wrecking business does not compel the inference, that the monthly wages agreed to be paid the crew were to be in lieu of any share in any salvage reward to which otherwise they might become entitled.

In Admiralty.

*Beebe, Wilcox & Hobbs,* for libellants.

*Owen & Gray,* for claimants.

BENEDICT, D. J.   This is an action, instituted by the chief engineer and a deck hand of the steam-boat Alert, to recover a share of the salvage compensation earned by the Alert in rescuing a derelict schooner called the Cetewayo. The particulars of the service rendered to the Cetewayo are not important to be noticed on this occasion, because it is admitted of record that the service was a salvage service, entitled to be compensated as such. It is also admitted that 50 per cent. of the value of the property saved is the proper amount of salvage, and that such percentage amounts to $2,643.93.

The only question presented for my determination is whether the libellants' agreement of hiring on board the Alert debars them from

the right to share in the salvage award referred to; which reward, it may be remarked, was conceded at the argument to have been paid to Scott, the owner of the Alert, since the filing of the libel herein, upon his agreeing to assume the defence of this action.

The fact relied on to sustain the position that the libellants are not entitled to maintain this action is thus stated in the answer: "As the claimants are informed and believe, none of the officers or crew of said tug had any interest whatever in the compensation to be paid for the services, having engaged in the wrecking business, and being paid for such particular service; and therefore never had any claim against said schooner for compensation for the services performed by said steam-tug." In regard to this defence it may be remarked that on its face it seems insufficient. The fact that the libellants engaged to work for pay in the wrecking business does not necessarily deprive them of the right to engage in a salvage service, and to participate in the reward thereof. Wrecking business is not in all cases salvage business. Whether, in any case, a wrecker performs a salvage service depends upon the circumstances. Scott, the owner of this tug, claims to be a wrecker by occupation, while he admits that he rendered a salvage service to the Cetewayo, and has not only claimed but been paid a salvage reward for the same. Treating the answer, however, as setting up an agreement on the part of the libellants to abandon to the owner any right they might acquire by reason of being engaged in performing salvage services while employed on the Alert, the question arises whether such an agreement can be upheld in the face of the provision of law to be found in section 4535, Rev. St., where it is declared that every stipulation in a seaman's agreement, to abandon any right which he may have or obtain in the nature of salvage, shall be wholly inoperative. This statute certainly affords room to contend that such an agreement as the claimant relies on must be held void, notwithstanding the subsequent act of June 9, 1874, (18 St. at Large, 64; Supp. Rev. St. vol. 1, p. 31.) See remarks in case of M'Carty v. Steam-propeller City of New Bedford, 4 FED. REP. 818. It may, perhaps, be possible to hold that the provision in section 4535 was not intended to apply in cases where a seaman, with full knowledge by an express agreement, undertakes to engage in a salvage service, and to waive any compensation therefor other than his regular wages. Although in England, where the Merchants' Shipping Act contains a provision from which the provision of our statute appears to have been copied, with the rest, it

was thought best to limit the effect of the provision by a subsequent statute. See Amendments to Merchants' Shipping Act in 1862, § 18; Maclachlan, Shipping, Sup. 12, 13. But, however this may be, as no point has been made upon the statute by the libellants in this case, the present case may well turn upon the question of fact on which the libellants have supposed it to turn, namely, whether any agreement was ever made by the libellants by which they abandoned or waived their right to participate in the reward for saving the schooner proceeded against. Upon this question of fact the testimony of each libellant is that he was hired at monthly wages in the ordinary manner, and that nothing whatever was at any time said by either party in regard to an abandonment or waiver of any right to claim salving; and there is no direct evidence to the contrary of this. The wages agreed to be paid to the men were ordinary monthly wages, such as are paid for ordinary services.

The case is thus reduced to the question whether the nature of the employment in which the Alert was engaged, at the time the libellants were hired, compels the inference that it was understood by them that the monthly wages agreed to be paid them should be in lieu of any share in any salvage award to which otherwise they might become entitled as part of the crew of the Alert. In my opinion no such inference can properly be drawn. It has been made plain that the Alert was engaged in wrecking, but wrecking does not necessarily include salving; and there is no proof that the Alert, during the time of the libellants' service, ever earned a salvage reward except in the case of the Cetewayo now under consideration. Scott, the owner himself, says that for the most part the boat worked under contract, and he does not say that her compensation was ever, except in this instance, dependent on success. No inference, adverse to the present demand, can therefore be drawn from the fact that in no other instance have the libellants claimed to be entitled to salvage. There is, in truth, nothing in the case from which to infer an agreement on the part of the libellants to abandon their right to participate in the salvage in question, except the bare fact that the vessel on which they were shipped was so equipped as to enable her to successfully perform salvage services in case the occasion for such services should arise. I am not prepared to say that, aside from the statute, a valid agreement might not have been made with these men which would have been a good defence to the present action, but I am quite sure that such an agreement is not proved by any evidence in this case.

There are abundant and obvious reasons for requiring, in cases of a defence like the present, clear proof of a plain agreement, made with due consideration for the seaman, and with full knowledge on his part, before a court of admiralty will feel justified in allowing the reward, which the maritime law gives for personal merit and upon grounds of public policy, to be diverted from the hands of those who perform the labor to the pocket of him who owns the ship. In this case there appears to me a total absence of such proof as the law requires, and therefore there is no other way but to adjudge the libellants entitled to share in the salvage under consideration.

Inasmuch as it appears that the libellants are the only persons whose claims have not been paid or adjusted, there only remains to determine the share of $2,643.93, admitted to be the gross amount of the salvage, proper to be awarded to the libellants. In view of all the circumstances I am of the opinion that $150 is the proper allowance to be made to the libellant Enos, and $100 the proper allowance to the libellant Cavanagh.

A decree will accordingly be entered in favor of the libellants, respectively, for the above-named amounts, and they must recover their costs.