Joseph RAUCH, Mariner, for himself and others interested as salvors, Libellant,

v.

GULF REFINING COMPANY, Respondent.

Joseph RAUCH, Mariner, for himself and others interested as salvors, Libellant,

v.

BLACK WARRIOR TOWING COM-PANY, Respondent.

Nos. 2400, 2438.

United States District Court,
E. D. Louisiana,
New Orleans Division.

April 1, 1955.

Dodd, Hirsch & Barker, and John F. Fox, New Orleans, La., for libellant.

Lemle and Kelleher, George B. Matthews, New Orleans, La., for respondents.

WRIGHT, District Judge.

Libellants, members of the crew of the Tugs Port Allen, Port Hudson, and Humrick, all owned and operated by Crescent Towing and Salvage Company, Inc., assert a claim against respondents for salvage services rendered to three tank barges, owned by Black Warrior Towing Company, and gasoline cargo in the barges owned by the Gulf Refining

Company. An explosion followed by fire on the barges while they were moored to the Gulf Refining Company dock near Gretna, Louisiana, placed the vessels and cargo in the jeopardy requiring the salvage. The details of this explosion and fire are more fully set out in the opinion of this court in Hartford Accident & Indemnity Co. v. Gulf Refining Company, D.C., 127 F.Supp. 469, 1955 A.M.C. 197.

In addition to the Port Allen, Port Hudson and Humrick, the Tugs Edward Luckenbach, Samson, A. W. Whiteman, Independent, Bisso, R. W. Wilmot, Cappy, and the Fire Tug Deluge participated in the salvage which resulted in the cargo-laden barges being detached from the flaming wharf, the fire on the barges themselves extinguished, and the barges towed to a safe landing. By stipulation it is agreed that the salved hull value of the three barges totals $27,000 and the salved cargo value is $82,081.43.[1]

Salvage claims were presented to Gulf and Black Warrior by the owners of the salving vessels. These claims were settled by Gulf and Black Warrior paying to Crescent Towing and Salvage Company, Inc., as owners of the Tugs Port Allen, Port Hudson and Humrick, the sum of $7,000, to E. N. Bisso & Son and Bisso Ferry Company, the bareboat charterer and owner, respectively, of Tugs Edward Luckenbach and Samson, the sum of $7,000, to New Orleans Coal & Bisso Towboat Company, as owner of Tugs R. W. Wilmot, Bisso, Independent and Cappy, the sum of $6,000, and to George W. Whiteman, as owner of the Tug A. W. Whiteman, the sum of $1,000. The Fire Tug Deluge, being owned by the Board of Commissioners for the Port of New Orleans, made no claim for salvage services. The settlement of these salvage claims was intended to include any awards which may be due the crews of the salving vessels. Libellants here, however, members of the crew of the Tugs Port Allen, Port Hudson and Humrick, were not consulted with reference to the salvage settlements. They were later offered by their employer, the Crescent Towing and Salvage Company, the sum of approximately $89 each as their participation in the salvage award. The offer was refused.

■■■ In considering the portion to be awarded one set of salvors, the contribution made by all concerned with the salvage effort, whether or not participating in the award, must be considered. The Blackwall,[2] 10 Wall. 1, 77 U.S. 1, 19 L.Ed. 870; Hendry Corp. v. Aircraft Rescue Vessels, D.C., 113 F.Supp. 198, 1953 A.M.C. 2115; Greene v. United States, D.C., 106 F.Supp. 682, 1952 A.M. C. 1542. Nonprosecution of their claims by some salvors and inability to make claim in others inures to the benefit of the salved vessels and cargo and not to salvors who do prosecute their claims. The Blackwall, supra. Ordinarily two-thirds of the salvage award goes to the vessel and one-third to the officers and men. Hendry Corp. v. Aircraft Rescue Vessels, supra; Greene v. United States, supra. No agreement between the owners or the salving vessels and the owners of the property salved can in any manner affect the individual claims of the members of the crew of the salving vessels, unless the crew members have indicated their assent to the agreement. 46 U.S. C.A. § 600; Baker Salvage Co. v. The Taylor Dickson, D.C., 40 F. 261; The Cetewayo, D.C., 9 F. 717. Particularly distinguished salvage service performed by individuals should be specially recog-

---

1. The value of the Port Allen is $250,000, the Port Hudson $250,000, and the Humrick $350,000.

2. In The Blackwall, 10 Wall. 1, 77 U.S. 1, 19 L.Ed. 870, the Supreme Court named the following considerations as determinants of the amount of a salvage award: (1) The labor expended by the salvors in rendering the salvage service. (2) The promptitude, skill, and energy displayed in rendering the service and saving the property. (3) The value of the property employed by the salvors in rendering the service, and the danger to which such property was exposed. (4) The risk incurred by the salvors in securing the property from the impending peril. (5) The value of the property saved. (6) The degree of danger from which the property was rescued.

nized to serve as an encouragement to others who may in the future be called upon to exhibit special skill, and to expose themselves to special dangers, in a salvage operation. Petition of Esso Shipping Co., D.C., 122 F.Supp. 133, 1954 A.M.C. 734.

The record shows that three men were killed and several injured in the initial explosion which started the fire on these gasoline-laden tank barges. The record shows that as the fire raged across the barges, there was at least one additional explosion while the salvage work was going on. The salvage work consisted of the tugs going alongside the barges to pump water on the fire and to allow members of the tug crews to go aboard. It appears that four of the libellants actually boarded these flaming gasoline-loaded tank barges to make lines fast, to release lines, to extinguish the fire, and to shut down the discharge operation which was then in progress on one of the barges. The service performed by these four seamen, as well as the other members of the crews of the Port Hudson, Port Allen, and the Humrick, was salvage of a high order, risking, as they did, their very lives. Primarily as a result of their services, on their tugs as well as the barges themselves, two of the three barges, with their cargoes, were salved. The salved value of these two barges with cargo was $95,695, or 86% of the total value of the property saved in the salvage operation.

Under the circumstances, this court finds that an over-all salvage award of 20% of the value of the cargo and barges salved is justified and that Port Allen, Port Hudson and Humrick, with their crews, are entitled to 50% of that over-all award, to be divided two-thirds to the vessels and one-third to the men. An extra award of $400 should go to Seaman Rauch, $300 to Seaman Scariano, $200 to Seaman Meyers, and $100 to Seaman Doubouisson for their daring in boarding the flaming gasoline-laden barges to further the salvage operations, these extra awards to be taken out of the portion to be paid the crews of the vessels. These men are to receive a pro rata share with the other crew members in addition to the special awards.

Decrees accordingly.